UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DAVID LEE JOHNSON,

        Plaintiff,

v.                                      Case No. 18-CV-613

TONIA MOON, SGT. JOSEPH BEAHM,
and JAMIE MOUNGEY,

        Defendants.

## DECISION AND ORDER

Plaintiff David Lee Johnson, who is represented by counsel, brings this lawsuit under 42 U.S.C. § 1983. (ECF No. 1.) Johnson alleges that defendants Sergeant Joseph Beahm and Sergeant Jamie Moungey were deliberately indifferent to his medical needs when they failed to give him his medication on December 18, 2017. Johnson further alleges that defendant Tonia Moon, an inmate complaint examiner, failed to investigate Johnson's inmate complaints concerning the December 18, 2017 incident. The defendants filed a motion for summary judgment (ECF No. 58), which has been fully briefed and is ready for resolution. The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 6, 35.)

1. **Preliminary Matters**

Regarding Johnson's claim against Tonia Moon, the defendants submitted evidence that Moon affirmed (accepted as valid) one of Johnson's inmate complaints

concerning the events of December 18, 2017, and did not have jurisdiction over the other inmate complaint because a conduct report against Johnson was pending. (ECF No. 62, ¶¶ 18-20, 27.) In his response to the defendants' summary judgment motion Johnson acknowledges these facts as true and requests that the court dismiss Moon from the lawsuit. (ECF No. 66 at 4.) Accordingly, the court dismisses the claims against Tonia Moon.

Also, because Johnson is represented by counsel, the court is under no obligation to liberally construe his summary judgment submissions. The court notes that Johnson included his response to the defendants' proposed findings of fact within the body of his memorandum of law. (ECF No. 66.) As such, any lack of clarity as to Johnson's response to the defendants' proposed findings of fact, and the factual basis, therefore, is a result of Johnson not including his response in a separate document.

As for additional facts that Johnson introduces, any additional proposed findings of fact must be presented only in accordance with Civ. L.R. 56(b)(2)(B)(ii), which ensures that the moving party is able to have an opportunity to respond to each additional proposed finding of fact. Johnson introduces facts in a narrative form at the outset of his brief instead of in "a statement, consisting of short numbered paragraphs." Civ. L.R.56(b)(2)(B)(ii). His cites to the record are haphazard and disorganized, making it difficult to determine what evidence he is using to support his factual assertions. Therefore, they are disregarded.

## 2. Facts

### 2.1 Parties

Plaintiff David Johnson was an inmate at Waupun Correctional Institution during the relevant time period. (ECF No. 62, ¶ 1.) On January 15, 2019, Johnson was released from custody and is currently on extended supervision. (*Id.*, ¶ 2.) Defendants Jamie Moungey and Joseph Beahm were Correctional Sergeants at Waupun during the relevant time period. (*Id.*, ¶ 6.)

### 2.2 *Waupun's Medication Distribution System*

In 2017 Waupun used a paper-based system to administer medication. (ECF No. 62, ¶ 37.) Inmate prescriptions were ordered by an Advanced Care Provider, such as a doctor, advanced practice nurse, or physician assistant. (*Id.*, ¶¶ 35-36). When an Advanced Care Provider prescribed a medication for an inmate, Waupun's Health Services Unit (HSU) staff would fill out a paper administration record for each inmate that listed the type of medication prescribed, the dosage, and the delivery times. (*Id.*, ¶ 37.) HSU staff was also responsible for organizing each inmate's dosage for delivery to the inmate's housing unit by placing the correct dosage on the delivery cart. (*Id.*, ¶ 38.) Upon delivery, the medications were stored in the housing unit in a cabinet with slots corresponding with delivery times—morning, noon, evening, and bedtime. (*Id.*, ¶ 41.) Correctional officers on the housing unit controlled access to medications that could cause overdose or that could be sold to other inmates, delivering the medications during a designated "medication pass time."(*Id.*, ¶¶ 39, 42-43.) It was an inmate's responsibility to monitor his supply of controlled medications

within the housing unit and, when it was running low, submit form DOC-3035C-Medication/Medical Supply Refill Request to HSU to request a refill. (*Id.*, ¶ 44.)

### 2.3 Johnson's December 18, 2017 Interaction with Sgt. Moungey

The following facts are undisputed.[1] On December 18, 2017, defendant Sgt. Jamie Moungey was working the 8:30 p.m. medication pass time in Johnson's housing unit in general population. (ECF No. 62, ¶ 48.) Johnson approached Moungey and demanded his medication for his bi-polar disorder. (*Id.*, ¶ 51; ECF No. 66 at 15, ¶ 51.) Moungey looked for Johnson's medication on the medication cart and in the refill slots but could not find it. (*Id.*, ¶ 54.) She told Johnson that she did not have his medication and that he needed to write HSU to have it refilled. (ECF No. 62, ¶ 53.) Johnson responded, loudly, that Moungey needed to call HSU to get it for him. (*Id.*, ¶ 56.) Moungey told Johnson that she would not be calling HSU because it was his responsibility to get his medication refilled. (*Id.*, ¶ 57.) Because approximately 15-20 other inmates were out of their cells waiting to receive medication, Moungey states she was unable to leave her post to contact HSU due to potential security risks. (*Id.*, ¶¶ 59, 61, 71.)

Johnson continued to yell and demand that Moungey call HSU to check on his medication. (ECF No. 62, ¶ 58.) Because Johnson was becoming agitated and starting to pose a security threat, Moungey ordered him to return to his cell and lock himself in. (*Id.*) Johnson refused, yelling, "I'm not locking in anywhere! Call someone then! I'll go to seg!" and began frantically pacing. (*Id.*, ¶ 60.) Moungey then ordered Johnson to

---

[1] *See* Johnson's response to the defendants' proposed findings of fact, contained within Johnson's response to the defendants' summary judgment motion. (ECF No. 66 at 11-16.)

4

lock into a cell closer to where he was standing, but Johnson once again loudly refused. (*Id.*, ¶ 62.) At that point Moungey notified her supervisor, Captain Olson (not a defendant), and he immediately responded. (*Id.*, ¶ 63.)

Johnson admits that he was "very upset, agitated and unpredictable," and does not dispute that he "was a serious threat to staff and other inmates because of how upset he was." (ECF No. 66 at 15, ¶ 51.) Once Captain Olson arrived on the scene he ordered Johnson to place his hands behind his back so he could handcuff him, an order he had to repeat several times. (ECF No. 62, ¶ 66.) When Johnson refused, Olson displayed his taser. (*Id.*, ¶ 67.) Johnson ultimately complied without Olson having to deploy his taser. (*Id.*) Olson then took Johnson to the Restrictive Housing Unit to place him on temporary lockup status, which is "a non-punitive status in the Restrictive Housing Unit, pending an investigation and a disciplinary hearing." (*Id.*, ¶ 69.) Because of Johnson's removal to temporary lockup, Moungey was no longer responsible for looking into the issue regarding Johnson's medication. (*Id.*, ¶ 71.) Moungey issued Johnson a conduct report for disobeying orders and causing a disruption. (*Id.*, ¶ 72.)

### 2.4 *Johnson's December 18, 2017 Interaction with Sgt. Beahm*

Beahm was working in the Restrictive Housing Unit on the night of December 18, 2017. (*Id.*, ¶ 78.) His shift started at 10:00 p.m., and prior to starting his shift Beahm was debriefed on Johnson's situation. (*Id.*, ¶¶ 78-80.) During the debriefing Beahm was told that Johnson's medication was out and had to be ordered from the pharmacy in the morning. (*Id.*, ¶ 80.) When Beahm started his shift, Johnson was in

5

strip cell 1, undergoing the routine strip-search required of all inmates who enter the Restrictive Housing Unit to ensure they do not bring in contraband. (*Id.*, ¶ 79.) Beahm noted that Johnson was agitated and angry. (*Id.*, ¶ 80.)

When Johnson asked Beahm for his medication Beahm told him that his medication was out. (ECF No. 62, ¶ 80.) When Johnson refused to believe Beahm, Beahm contacted HSU to see if a nurse wanted to examine Johnson. (*Id.*, ¶ 82.) The nurse declined to see Johnson and told Beahm that there was nothing HSU could do about the medication until the next morning. (*Id.*) Beahm relayed this information to Johnson. (*Id.*, ¶ 83.)

Johnson disputes that Beahm called HSU and talked to a nurse but offers no admissible evidence supporting this assertion. (ECF No. 66 at 19, ¶¶ 68-69.) Johnson refers to "Marchant's letter to Defendant Tonia Moon" that "infers that HSU was never contacted by Defendant Beahm or anyone else relative to the issue of Johnson's medication." *(Id.)* Johnson does not identify who "Marchant" is or the basis for his or her information. Nor does Johnson provide a specific reference to an affidavit, declaration, part of the record, or other supporting material that he relies on to support his statement about the letter, in violation of Civil Local Rule 56(b)(2). In fact, he does not even provide a cite for the letter or otherwise identify for the court or the defendants where in the record the letter is located. (ECF No. 66 at 19, ¶¶ 68-69.) On its face, any such letter by itself would appear to be inadmissible hearsay.

It is undisputed that Johnson received his medication the next morning. (*Id.*, ¶ 84.)

6

### 3.     Summary Judgment Standard

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'"

*Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

    **4.      Analysis**

Because Johnson agreed to dismiss Tonia Moon from the suit, the only remaining question is whether Moungey and Beahm were deliberately indifferent to Johnson's mental health needs when they did attempt to obtain his medication on the night of December 18, 2017. A prison official violates the Eighth Amendment when he is deliberately indifferent "to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This encompasses not only inmates' physical health needs but also their mental health needs. *Richter v. Vick*, No. 17-C-1595, 2018 WL 6813927 at * 7 (E.D. Wis. Dec. 27, 2018.)(citing *Wellman v. Faulkner*, 715 F.2d 269, 272 (7th Cir. 1983)(internal citations omitted)).

To state a claim for deliberate indifference to medical needs a prisoner "must show (1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). "A medical need is sufficiently serious if the plaintiff's condition 'has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Roe v. Elyea,* 631 F.3d 843 857 (7th Cir. 2011) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). The condition does not need to be life-threatening to be serious; it need only be "a condition that would result in further significant injury or unnecessary and wanton infliction of pain" if not addressed. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). Johnson

8

suffers from bi-polar disorder and takes medication to treat it. The court finds for the purposes of summary judgment that his medical condition is objectively serious.

"To determine if a prison official acted with deliberate indifference, we look into his or her subjective state of mind." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). While "a plaintiff does not need to show that the official intended harm or believed that harm would occur . . . showing mere negligence is not enough." *Id*. Demonstrating that an official "engaged in the best possible course of action (or even whether he was grossly negligent) is not the standard for deliberate indifference. Instead [courts] require 'something approaching total unconcern for the prisoner's welfare in the face of serious risks.'" *Broadfield v. McGrath*, 737 Fed. App'x 773, 775 (7th Cir. 2018). In other words, the prison official must have "*actually* [known] of and disregarded a substantial risk of harm." *Petties*, 836 F.3d at 728 (emphasis in original). Where there is a delay in treatment, it "may constitute deliberate indifference if such delay 'exacerbated the injury or unnecessarily prolonged an inmate's pain.'" *Gomez v. Randle,* 608 F.3d 859, 865 (7th Cir. 2012) (quoting *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)).

Johnson's claim is essentially that Moungey and Beahm, by deliberately failing to attempt to find his medication on the night of December 18, 2017, delayed treatment of his bi-polar disorder. But Johnson has not offered any evidence that had Moungey and Beahm done what he contends they should have done but didn't do—that is, immediately contact the HSU and try to find out where his medication was at—they would have been successful in obtaining his medication. To the contrary, the

9

evidence is that the HSU was out of the medication and had to wait until the next morning to obtain a refill. In addition, Johnson has presented no evidence that the short delay in getting him his medication caused him any harm. *See Johnson v. Pollard*, No. 08-cv-279, 2009 WL 3063327 at \*15 (E.D. Wis. Sept. 16, 2009) (holding that a prison official was not deliberately indifferent for inadvertently missing one dose of an inmate's mental health medication because there was no showing that the inmate suffered any harm); *Ponchik v. State*, No. 05-C-279, 2007 WL 870319 at \*4 (E.D. Wis. Mar. 19, 2007) (determining that a plaintiff who missed doses of his medication 158 times of a six-month period could not prevail on his deliberate indifference claim because he did not demonstrate that the missed doses resulted in any harm.)

There is also nothing in the record to suggest that either Moungey's or Beahm's actions approached anything like total unconcern for Johnson's well-being. Johnson states that Moungey should have called HSU immediately and determined why his medication was missing. However, "prisons have limited resources, and that fact makes some delay [in providing medical care] inevitable." *Mitchell v. Kallas*, 895 F.3d 492, 500 (7th Cir. 2018). To determine whether Moungey's chosen course of action—to continue delivering medication to the other inmates—qualifies as deliberate indifference to Johnson, the court "must weigh 'the seriousness of [Johnson's] condition and the ease of providing treatment.'" *Id.* (quoting *Petties*, 836 F.3d at 730).

Moungey took what steps she could to determine what happened to Johnson's dose considering that she was also trying to distribute medication to an additional 15

10

to 20 inmates who were out of their cells. She searched for his medication and checked the refill bins. While she did not take the time to call HSU and instead instructed Johnson to write to HSU, her decision was reasonable given the security risks of her situation and the lack of any apparent medical emergency. *See Taylor v. Malcolmson*, No. 13-C-038, 2014 WL 4176074 at *10 (E.D. Wis. Aug. 20, 2014) ("In a situation in which it is not obvious that an inmate needs immediate medical assistance, it is reasonable to advise an inmate to submit a medical request form.").

Also, it is undisputed that Johnson became disorderly and his behavior posed a significant security threat. His failure to follow Moungey's order to go to his cell, requiring that she spend time tracking down someone else to help her deal with Johnson, contributed to Moungey's limited ability to address the missing medication. In the absence of anything in the record suggesting that Moungey was aware of a serious risk to Johnson's welfare or that her response to Johnson's situation was inadequate in light of the circumstances, no reasonable factfinder could conclude that she was deliberately indifferent to Johnson's serious mental health needs.

Also, no reasonable factfinder could conclude that Beahm was deliberately indifferent to Johnson's mental health needs. When Johnson asked for his medication, Beahm states that he called HSU in an attempt to resolve the situation and that HSU told him nothing could be done until morning. While Johnson disputes that Beahm called HSU, he provides no admissible evidentiary support for his assertion that Beahm did not call HSU. Bald assertions that are not bolstered by evidence are insufficient to create a genuine issue of material fact. *Drake v. Minn Mining & Mfg*

11

*Co.*, 134 F.3d 878, 887 (7th Cir. 1998). And, again, there is no evidence in the record that Johnson suffered a medical emergency or any sort of harm as a result of a brief delay in getting his medication. Absent an emergency situation, "non-medical officers are entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care . . . ." *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008). That is exactly what Beahm did here. Thus, the undisputed facts demonstrate that Beahm was not deliberately indifferent to Johnson's medical needs.

Because there is no genuine dispute of material fact as to whether Moungey's and Beahm's actions constituted deliberate indifference to Johnson's serious medical needs, the court grants summary judgment in their favor. The defendants also argued that they were entitled to qualified immunity. Because the court grants summary judgment on the merits, it does not need to address the qualified immunity argument.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (ECF No. 58) is **GRANTED.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely

requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 2nd day of February, 2021.

BY THE COURT

*William E. Duffin*

WILLIAM E. DUFFIN
United States Magistrate Judge